UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:17-CV-00048-HBB

GORDON A. REARDON                                                     PLAINTIFF

VS.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security                                DEFENDANT

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Gordon A. Rearden ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 12) and Defendant (DN 18) have filed a Fact and Law Summary. For the reasons that follow, judgment is granted for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 10). By Order entered July 7, 2017 (DN 11), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

## FINDINGS OF FACT

Plaintiff filed an application for Disability Insurance benefits on March 22, 2013 (Tr. 25-56). Plaintiff alleged that he became disabled on August 30, 2012, as a result of back problems and related surgeries, high cholesterol, heart problems nerve pain, and neuropathy (Tr. 25, 280). Administrative Law Judge Emilie Kraft ("ALJ") conducted a video hearing from Paducah, Kentucky on March 11, 2015 (Tr. 76-114). Plaintiff and her attorney, Sara Martin, participated from Owensboro, Kentucky (Id.). James B. Adams testified as an impartial vocational expert during the hearing (Id.). The ALJ conducted a supplemental video hearing from Paducah, Kentucky on October 8, 2015 (Tr. 41-75). Plaintiff and her attorney, Sara Martin, participated from Owensboro, Kentucky (Id.). Stephanie Barnes, Rh.D., testified as an impartial vocational expert during the supplemental hearing (Id.).

The ALJ issued a decision dated December 30, 2015 (Tr. 14-40). She evaluated Plaintiff's adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Id.).

At the first step, the ALJ found that Plaintiff had engaged in substantial gainful activity since the alleged onset date of August 30, 2012 (Tr. 16, Finding No. 2). More specifically, the ALJ concluded because Plaintiff engaged in substantial gainful activity from May 9, 2014 through January 20, 2015, he cannot be found disabled during that period of time (Tr. 16-17).

At the second step, the ALJ determined since the alleged onset date of disability, August 30, 2012, Plaintiff "has had the following severe impairments: cervical degenerative disc disease; lumbar degenerative disc disease; status post spinal fusion at L4-L5; artherosclerotic heart disease; status post stent placement; depression; history of knee surgeries; and obesity" (Tr. 17, Finding

No. 3). The ALJ also determined that Plaintiff's moderate obstructive sleep apnea is a "non-severe" impairment (Id.). At the third step, the ALJ concluded since the alleged onset of disability, August 30, 2012, Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 17-18, Finding No. 4).

At the fourth step, the ALJ made the following findings:

> After careful consideration of the entire record, the undersigned finds that since August 30, 2012, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) (i.e., Lifting and/or carrying 10 pounds occasionally and less than 10 pounds frequently, standing and/or walking (with normal breaks) for a total of about 2 hours in an 8-hour workday, sitting (with normal breaks) for a total of about 6 hours in an 8-hour workday, and pushing and/or pulling consistent with lifting and/or carrying) except he can frequently, reach, handle, finger and feel. He can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. He can occasionally balance, stoop, kneel, crouch and crawl. He can have no exposure to unprotected heights, moving mechanical parts, or operation of a motor vehicle. He can have exposure to humidity/witness, extreme cold, extreme heat, and vibration. He can frequently push and/or pull with bilateral upper extremities. He needs to sit, stand or change positions approximately every hour. He is limited to performing simple, routine tasks.

(Tr. 19, Finding No. 5). Relying on testimony from the vocational expert, the ALJ found since August 30, 2012, Plaintiff has been unable to perform any past relevant work (Tr. 30, Finding No. 6).

At the fifth step, the ALJ found that Plaintiff was a younger individual (age 45-49) from August 30, 2012 through September 30, 2014 (Tr. 30, Finding No. 7). The ALJ concluded that on October 1, 2014, Plaintiff became an individual closely approaching advanced age (age 50-54)

3

(Id.). The ALJ determined that Plaintiff had at least a high school education and was able to communicate in English (Id., Finding No. 8).

The ALJ considered Plaintiff's residual functional capacity, age, education, past work experience[1], and the vocational expert's testimony (Tr. 30-31). The ALJ found that prior to May 9, 2014, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed (Tr. 30-31, Finding No. 10). The ALJ noted that from May 9, 2014 through January 20, 2015, Plaintiff engaged in substantial gainful activity (Id., Finding No. 11). The ALJ found that beginning January 21, 2015, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform (Tr. 31, Finding No. 12). Therefore, the ALJ concluded that Plaintiff was not disabled prior to January 21, 2015, but became disabled on that date and has continued to be disabled through the date of the decision (Tr. 32, Finding No. 13).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 8-9). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y

---

1 The ALJ found that prior to May 9, 2014, the date that claimant returned to substantial gainful activity, transferability of job skills was not material to the determination of disability because using the Medical-Vocational rules as a framework supported a finding that Plaintiff was "not disabled" regardless of whether he had transferable skills (Tr. 30). The ALJ concluded that beginning on January 21, 2015, the date that Plaintiff was no longer performing substantial gainful activity, he had not been able to transfer job skills to other occupations (Id.).

of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

5

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, at the fifth step, the ALJ found that Plaintiff was not disabled prior to January 21, 2015, but became disabled on that date.

Challenged Findings

Although not expressly stated, the five arguments set forth in Plaintiff's memorandum suggest that he is either directly or indirectly challenging Finding Nos. 2, 5, 10, 11, 12, and 13 (DN 12; DN 12-1 PageID # 1304-16). Plaintiff takes issue with the ALJ's determination that he engaged in substantial gainful activity from May 9, 2014 to January 20, 2015 (Id. PageID #

6

1315-16). Plaintiff contends the ALJ should have determined this was a trial work period because the medical evidence demonstrates he became disabled on August 30, 2012 (Id.). Plaintiff also presents four arguments that dispute whether substantial evidence supports the ALJ's residual functional capacity assessment ("RFC") (DN 12-1 PageID # 1304-15). Plaintiff believes the ALJ should have found he became disabled on August 30, 2012 (Id.).

A.

With regard to the first step in the sequential evaluation process, Plaintiff disagrees with the ALJ's determination that he engaged in substantial gainful activity from May 9, 2014 to January 20, 2015 (Id. PageID # 1315-16, citing Finding No. 2). Plaintiff contends the ALJ erred in failing to properly recognize his work from May 9, 2014 to January 20, 2015 as a trial work period (Id.). Plaintiff argues the ALJ improperly assessed his residual functional capacity because the objective evidence and opinion of his treating physician, Dr. James Rogan, make clear he was limited to less than sedentary work as of August 30, 2012 (Id.). Plaintiff asserts that after having undergone two lumbar fusions, he did the commendable thing and attempted to work, something the Social Security Administration encourages (Id.). Plaintiff points out that his work was not sustainable due to his ongoing disabilities (Id.). "As such, this time period should have been recognized as a trial work period according to [Social Security Program Operations Manual System ("POMS")] DI 13010.060" (Id.).

Defendant argues that the trial work period provided for in 20 C.F.R. § 404.1592 was designed to permit a claimant, already determined to be disabled, to test his ability to work while still being considered disabled (DN 18 PageID # 1329-30, citing Allen v. Apfel, 3 F. App'x 254, 258 (6th Cir. 2001) and Salamalekis v. Comm'r of Soc. Sec., 221 F.3d 828, 831 (6th Cir. 2000).

7

Defendant points out that Plaintiff was not deemed "disabled" prior to his return to work in May 2014 and, therefore, his reliance on the trial work period analogy is misplaced (Id.).

In relevant part the regulation at issue reads as follows:

> (d) Who is and is not entitled to a trial work period.
>
> > (1) You are generally entitled to a trial work period *if you are entitled to disability insurance benefits*, child's benefits based on disability, or widow's or widower's or surviving divorced spouse's benefits based on disability.
> >
> > (2) You are not entitled to a trial work period—
> >
> > . . .
> >
> > (iii) If you perform work demonstrating the ability to engage in *substantial gainful activity within 12 months of the onset* of the impairment(s) that prevented you from performing substantial gainful activity and *before the date of any notice of determination or decision finding that you are disabled*; or
> >
> > . . .

20 C.F.R. § 404.1592(d)(1) and (2)(iii) (emphasis added). The Sixth Circuit has indicated that "a 'trial work period' only applies after a person has been adjudged disabled, in order to permit efforts to resume work without jeopardizing benefits if the effort failed." Mullis v. Bowen, 861 F.2d 991, 993 (6th Cir. 1988)[2]; *see also* Allen v. Apfel, 3 F. App'x 254, 258 (6th Cir. 2001) ("[T]he trial work period provided for in § 404.1592 was designed to permit a claimant, already deemed disabled, to test his ability to work and still be considered disabled.") (citing Salamalekis v. Comm'r of Soc. Sec., 221 F.3d 828, 831 (6th Cir. 2000)). The Sixth Circuit's interpretation of §

---

[2] The Sixth Circuit recognizes an exception to the adjudged disabled requirement when the claimant has "degenerative diseases such as multiple sclerosis and myasthenia gravis." Mullis v. Bowen, 861 F.2d 991, 993 (6th Cir. 1988).

404.1592(d) is in harmony with the express warnings in 20 C.F.R. §§ 404.1571 and 404.1520(a)(4)(i) that claimants will be found not disabled at the first step in the sequential evaluation process if they are performing work at the substantial gainful activity level during a period they claim to be disabled. See Mullis, 861 F.2d at 993-94 (citing 20 C.F.R. §§ 404.1571, 404.1520) (claimant found ineligible for disability benefits because of performance of work at the substantial gainful activity level during the time of the alleged disability).

Plaintiff's general reference to Social Security Program Operations Manual System ("POMS") DI 13010.060 is unavailing. It does not indicate that the trial work provision applies to DIB claimants who return to work at the substantial gainful activity level before they have been adjudged disabled.

At the first step, the ALJ found that Plaintiff had engaged in substantial gainful activity since the alleged onset date of August 30, 2012 (Tr. 16, Finding No. 2). In pertinent part the ALJ's decision reads as follows:

> The claimant stopped working in August 2012 and returned to work on May 9, 2014. He testified that he went back to work to see if he was going to be able to continue working permanently. He testified that when he first went back to work he was working about 70 to 80 hours a week to try to catch up financially. He stated that the work "took a toll on me" and he had to stop working on January 20, 2015.
>
> According to earnings record [sic], he had wages of $56,498.33 in 2014 (Exhibit 9D). He had wages of $13,302 in the first quarter of 2015 (Exhibit 8D). This clearly [sic] above the substantial gainful activity level of $1070 per month in 2014 and $1090 per month in 2015. This work activity cannot be considered an unsuccessful work activity due to the length of time he worked. The claimant testified that he worked from May 9, 2014 through January 20, 2015, which is approximately eight months. Social Security Ruling 84-25 states that substantial gainful activity level work lasting more than six months cannot be an unsuccessful work

9

> attempt regardless of why it ended or was reduced to the non-substantial gainful activity level.
>
> This work activity has also been considered as a possible trial work period. Pursuant to 404.1592, a trial work period is a period during which an individual may test their ability to work and still be considered disabled. The regulations state that an individual is not entitled to a trial work period "If [sic] you perform work demonstrating the ability to engage in substantial gainful activity within 12 months of the onset of the impairment(s) that prevented you from performing substantial gainful activity and before the date of any notice of determination or decision finding that you are disabled." Furthermore, to be eligible for a trial work period, an individual must be entitled to disability insurance benefits. The claimant returned to work on May 9, 2014. As will be explained below, disability is not established until he turned age 50, which is October 1, 2014, the day before his 50th birthday. Therefore, the claimant was not entitled to disability insurance benefits when he returned to work, and he performed substantial gainful activity within 12 months of onset. Accordingly, this work activity is not protected by the trial work provision and is considered substantial gainful activity.
>
> For the period May 9, 2014 through January 20, 2015, the claimant engaged in substantial gainful activity. As explained earlier, if an individual engages in substantial gainful activity, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. Therefore, for the period May 9, 2014 through January 20, 2015, the claimant cannot be found disabled.

(Tr. 17).

Substantial evidence in the record supports the ALJ's finding that Plaintiff performed work at the substantial gainful activity level from May 9, 2014 through January 20, 2015. The ALJ's determination that Plaintiff's work activity was not protected by the trial work provision in § 404.1592 comports with applicable law because substantial evidence in the record shows that Plaintiff had not been adjudged disabled when he engaged in that substantial gainful activity. Further, the ALJ's conclusion that Plaintiff cannot be found disabled for the period May 9, 2014

through January 20, 2015 comports with applicable law, 20 C.F.R. §§ 404.1571 and 404.1520(a)(4)(i), because substantial evidence in the record shows that during that time period he performed work at the substantial gainful activity level. In sum, contrary to Plaintiff's assertion, the ALJ properly recognized that Plaintiff's work from May 9, 2014 to January 20, 2015 was not a trial work period under § 404.1592.

Equally important, § 404.1520(b) specifically indicates "[i]f you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience." Thus, regardless of whether the objective evidence and opinion of his treating physician demonstrated he was disabled as of August 30, 2012, Plaintiff cannot be found disabled during the time period May 9, 2014 to January 20, 2015 because he performed substantial gainful activity. Since the ALJ found that Plaintiff is disabled as of January 21, 2015, all that remains at issue is the time period August 30, 2012 through May 8, 2014.

B.

Plaintiff's first challenge to the RFC involves the ALJ's assignment of "only partial weight" to the opinion that his treating physician Dr. James Rogan provided in a letter dated August 27, 2015 (DN 12-1 PageID # 1306-09 citing Tr. 28). Plaintiff contends the ALJ's determination is not supported by substantial evidence in the record because she overlooked nearly all of the objective evidence that substantiate Dr. Rogan's opinion, such as his findings on physical examination (January 27 2012 through May 4, 2015), the imaging (MRIs and CT scans

July 2, 2012 through July 31, 2015), and nerve conduction studies (July 26, 2012 through July 21, 2015) (DN 12-1 PageID # 1306-09). Plaintiff asserts that the ALJ should have given controlling weight to Dr. Rogan's opinion (Id.).

Defendant asserts that the ALJ properly articulated her rationale for choosing not to afford more weight to Dr. Rogan's opinion (DN 18 PageID # 1333-35, citing Tr. 28). Specifically, the ALJ indicated that Dr. Rogan's opinion regarding Plaintiff's ability to sit and stand was based on Plaintiff's report, not Dr. Rogan's own findings (Id.). Further, the ALJ noted that there was nothing in the record to suggest that Plaintiff required unpredictable breaks or frequent absences prior to his established onset date and she did not find this restriction to be supported by the time-relevant evidence (Id.). Defendant contends the ALJ provided good reasons for affording less than controlling weight to Dr. Rogan's findings (Id.).

The RFC is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546. The Administrative Law Judge makes this finding based on a consideration of medical source statements and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546; Social Security Ruling 96-5p; Social Security Ruling 96-7p. Thus, in making the RFC finding the Administrative Law Judge must necessarily assign weight to the medical source statements in the record. 20 C.F.R. § 404.1527(c); Social Security Ruling 96-7p.

Doctor Rogan prepared his letter of August 27, 2015, after having reviewed a copy of the consultative examination report prepared by Dr. Fred Griffiths (Tr. 1032). Essentially, Dr. Rogan's letter rebuts Dr. Griffiths' report and opinions regarding Plaintiff's limitations (Id.). Dr. Rogan begins by establishing that he has been Plaintiff's primary care physician since January

2002 and is familiar with Plaintiff's severe lower back and neck conditions (Id.). In pertinent part, Dr. Rogan indicates based on his own observations during office visits Plaintiff "always has difficulty with sitting and standing", and that "pain caused by his cervical conditions clearly limits his cervical range of motion" (Id.). Additionally, Dr. Rogan advises that Plaintiff "would only be able to sit and stand for twenty minutes at a time and could do each for no more than one-third of an eight hour day" because "according to [Plaintiff's] report, he would need to take unpredictable breaks throughout the day to lie down and/or recline in order to alleviate the pain from his neck and lower back" (Tr. 1032-33). Dr. Rogan also opined that Plaintiff "could not sustain an eight-hour work day without taking unpredictable breaks and heavy narcotic medication for at least one-third of the day" (Tr. 1033). Additionally, Dr. Rogan advised that Plaintiff would miss at least three days of work a month because he experiences days when his "pain and limitations are so debilitating that it is hard for him to get out of bed" (Id.). Moreover, Dr. Rogan indicated these limitations "have been *in effect throughout at least 15 years* of my treatment of [Plaintiff] with intermittent exacerbations in symptoms" (Id.) (emphasis added).

The ALJ accurately summarized the content in Dr. Rogan's letter, including the fact that Plaintiff was the source for many of the restrictions set forth therein (Tr. 28). In pertinent part, the ALJ's decision reads as follows:

> After careful consideration, the undersigned affords the statement of Doctor Rogan only partial weight. His opinion regarding the claimant's ability to sit and stand is based on the claimant's report rather than his own findings. There is nothing suggesting that the claimant required unpredictable breaks or frequent absences prior to his established onset date. In fact, he was working significant over time prior to his established onset date.

(Id.). While not expressly stated, the decision implicitly indicates the ALJ found Dr. Rogan's

13

opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with other substantial evidence in the record. These are good reasons for not assigning controlling weight to Dr. Rogan's opinion. *See* Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013). Moreover, the ALJ identified substantial evidence in the record supporting her conclusion (Tr. 28).

Plaintiff claims that the ALJ overlooked notations in Dr. Rogan's treatment record that purportedly set forth "objective findings" on physical examination. But those notations actually set forth Plaintiff's subjective complaints to Dr. Rogan (*see* Tr. 398, 608, 698, 728-29, 866, 868, and 973). Plaintiff asserts that the ALJ also overlooked the MRIs, CT scans, and nerve conduction studies (*see* Tr. 392, 485, 496, 557, 761-62, 881, 1019, 1026, and 1174) when assigning weight to Dr. Rogan's opinion. However, Dr. Rogan's treatment records do not appear to contain the MRIs, CT scans, and nerve conduction studies cited by Plaintiff (*see* Tr. 396-423, 508, 698, 728-35, 865-78, 971-77). More importantly, Dr. Rogan's letter of August 27, 2015, does not indicate that he reviewed and relied on those MRIs, CT scans, and nerve conduction studies in rendering his opinion (Tr. 1032-33). In fact, Dr. Rogan's letter clearly indicates the restrictions in his opinion are primarily the product of Plaintiff's subjective statements (Id.).

Further, Dr. Rogan's general statement about the limitations being in effect for at least 15 years is insufficient to relate back to Plaintiff's actual condition between August 30, 2012 and May 8, 2014 because of evidence in the record reflecting substantial changes in his condition during that 15 year time frame. For example, the severity of the exertional and postural limitations expressed by Dr. Rogan are contradicted by Plaintiff's return to work between May 9, 2014 and

14

January 20, 2015, and his working as many as 70 to 80 hours a week for several months before cutting back to 45 hours a week until he stopped working.

In sum, the ALJ's findings indicate she considered the treating relationship, Dr. Rogan's area of specialization, the consistency of his opinion with the record as a whole, the absence of objective evidence supporting his opinion, and other factors that tend to support or contradict the opinion (Tr. 28). *See* Gayheart, 710 F.3d at 376. Therefore, the Court concludes that the ALJ's findings—with regard to the weight assigned to Dr. Rogan's opinion—are supported by substantial evidence in the record and comport with applicable law.

C.

Plaintiff's second challenge to the RFC involves the ALJ's assignment of "great weight" to the opinions expressed by two non-examining state agency physicians, Drs. Donna Sadler and Robert Brown, of unknown specialty (DN 12; DN 12-1 PageID # 1309-10). Plaintiff contends that substantial evidence in the record does not support the ALJ's finding because Drs. Sadler and Brown did not have the opportunity to review a number of medical exhibits that were submitted after they rendered their opinions (Id.).

Defendant asserts that the ALJ's findings are supported by substantial evidence and comport with applicable law (DN 18 PageID # 1335-36). Defendant points out that notwithstanding the weight accorded to the opinions of these physicians, the ALJ actually set forth greater restrictions in the RFC because of the additional medical evidence submitted after they rendered the opinions (Id.). Further, Defendant argues that Plaintiff has not identified any of this additional evidence that the ALJ ignored in making the RFC (Id.).

On August 19, 2013, Dr. Sadler indicated that Plaintiff can occasionally lift and/or carry 10 pounds and frequently lift and/or carry less than 10 pounds; stand and/or walk for about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to extreme cold, extreme heat, wetness, and hazards (Tr. 123-25). On December 12, 2013, Dr. Brown indicated that Plaintiff can occasionally lift 20 pounds and frequently lift 10 pounds (Tr. 143-45). Otherwise he agreed with the restrictions expressed by Dr. Sadler (Id.).

The ALJ accurately summarized the restrictions that Drs. Sadler and Brown expressed at the initial and reconsideration levels (Tr. 29). In pertinent part, the decision reads as follows:

> The undersigned affords great weight to their opinion regarding the postural and environmental limitations. However, evidence at the hearing level, including extensive treatment notes, indicates sedentary work with a sit/stand option is more appropriate than light work activity. Accordingly, the undersigned is issuing a residual functional capacity that is more restrictive than those assessed by the state agency physicians.

(Id.). In response to Plaintiff's assertion about a lack of evidence regarding the specialty of Drs. Sadler and Brown, the regulations provide that "[s]tate agency medical and psychological consultants . . . are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). With regard to Plaintiff's complaint about the weight assigned to their restrictions, the ALJ complied with applicable law when she considered the fact that Drs. Sadler and Brown had not reviewed the evidence submitted at the hearing level. See Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009). The ALJ provided good reasons for assigning great weight to their postural and

environmental limitations while discounting their exertional limitations in favor of more restrictive limitations that were supported by the evidence submitted at the hearing level. *See* Gayheart, 710 F.3d at 376. In sum, the ALJ's findings regarding the weight assigned to the opinions of Drs. Sadler and Brown are supported by substantial evidence in the record and comport with applicable law.

D.

Plaintiff's third challenge to the RFC involves the ALJ's assignment of weight to the opinion of Robert W. Adams, Psy.D. (DN 12-1 PageID # 1310-12). Plaintiff asserts that the ALJ's assignment of great weight and no weight to parts of Dr. Adams' opinion was contradictory and not sufficiently explained (Id.). Plaintiff argues the ALJ cannot utilize portions of an opinion to support an unfavorable decision while discounting the rest of the opinion without sufficient explanation (Id.). Plaintiff also accuses the ALJ of failing to properly incorporate the limitations of his mental health condition into the RFC (Id.).

Defendant asserts that the ALJ's assignment of great weight to only part of Dr. Adams' opinion and to discount the other part is supported by substantial evidence in the record and comports with applicable law (DN 18 PageID # 1336-37). Defendant contends that the ALJ is not require to afford great weight to an entire opinion (Id.).

At the state agency's request, Dr. Adams performed a consultative psychological evaluation of Plaintiff on July 18, 2013 (Tr. 546-50). He concluded as follows:

> A. Is person able to understand, retain, and follow simple instructions? Yes.
>
> B. Is person able to sustain attention to perform simple tasks? He often does not complete tasks that he begins. It is not clear if this is because he loses track or loses interest or gets too tired.

17

  C. Is person psychologically able to relate to others, including fellow workers? He is quite irritable every day.

  D. Is person able to tolerate the stress and pressures associated with day-to-day work activities? It is this examiner's opinion that if physically able his emotional state would improve. However, counseling and an increase in his medication would probably help also. As mentioned above the reasons he is not working are related to his heart and back problems.

(Tr. 550). On August 19, 2013 and on December 12, 2013, non-examining state agency psychological consultants Julie Bruno, Psy.D. and Lea Perritt, Ph.D., respectively, reviewed the record, including Dr. Adams' report, and concluded that Plaintiff would be able to maintain sufficient concentration, pace, and persistence over a 40 hour work week to perform 1-2 step simple tasks (Tr. 121-28, 141-49).

  The ALJ accurately summarized the restrictions expressed by Doctor Adams (Tr. 29). In pertinent part the ALJ's decision reads as follows:

> Doctor Adams' opinion regarding the claimant's ability to understand, retain and follow simple instructions is afforded great weight as it is consistent with his findings. However, his opinion regarding the claimant's ability to sustain attention to perform simple tasks, his ability to relate to others, and his ability to tolerate stress and pressures associated with day-to-day work activity is afforded no weight. His opinion is vague and ambiguous. The extent of the claimant's actual ability is unclear.

(Id.). Contrary to Plaintiff's assertion, the ALJ clearly explained why she assigned great weight to Doctor Adams' opinion that plaintiff can understand, retain, and follow simple instructions. Moreover, the ALJ plainly indicated that she discounted Doctor Adams' other three opinions

because they were vague and ambiguous with regard to Plaintiff's actual ability. These findings are supported by substantial evidence and comport with applicable law. *See* Gayheart, 710 F.3d at 376.

Additionally, the ALJ noted that Drs. Bruno and Perritt had opined that Plaintiff was capable of performing simple, routine tasks (Tr. 29). The ALJ afforded great weight to their opinions because they were generally consistent with the finding of Doctor Adams that Plaintiff was able to understand, retain, and follow simple instructions (Id.). Additionally, the ALJ found the opinions of Doctors Bruno and Perritt consistent with Plaintiff's history of conservative mental health treatment which consisted of psychotropic medication prescribed by his family practitioner (Id.). These findings are supported by substantial evidence and comport with applicable law. *See* Gayheart, 710 F.3d at 376. Additionally, there is no merit to Plaintiff's assertion that the ALJ erred in failing to properly assess his mental health conditions and limitations.

E.

Plaintiff's fourth challenge to the RFC involves the ALJ's purported failure to determine the combined effects of his physical and mental impairments (DN 12-1 PageID # 1312-15). Defendant points out that the ALJ found that Plaintiff had a number of severe physical and mental limitations and accounted for them in the restrictive RFC determination (DN 18 PageID # 1337). The Court has carefully reviewed the record and concludes that the ALJ did consider the combined effects of Plaintiff's physical and mental impairments in the RFC determination. The ALJ's RFC determination is supported by substantial evidence in the record and comports with applicable law.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

Copies:    Counsel